394 Brame *v.* Guar. Finance Co., 139 Va. 394.

Opinion.

# Staunton.

## S. R. Brame v. The Guarantee Finance Company, Inc., et als.

### September 18, 1924.

1. APPEAL AND ERROR—*Notice of Intention to Apply for Transcript—Sufficiency—Case at Bar.*—Section 6339 of the Code of 1919 provides that a person intending to apply for a transcript of the record shall notify the opposite party, or his counsel. In the instant case, while the notice usually appearing in a transcript of the record was not incorporated in the record before the Supreme Court of Appeals, a notice duly served upon one of counsel for appellees was. filed with the court and is conclusive, as shown by the return thereon, that counsel were aware that the transcript would be applied for, and therefore the statute was sufficiently complied with.

2. APPEAL AND ERROR—*Record—Copy "Teste"—Admission Held not to Require Dismissal—Case at Bar.*—In the instant case the record came to the Supreme Court of Appeals merely as a copy "teste," and it was objected that the clerk had not duly authenticated the same nor certified that the notice required was given the parties or their counsel.

   *Held:* That while the method employed was not to be commended, the appeal would not be dismissed, as litigants are entitled to have their rights determined unfettered by the harsh rules of technical construction and application.

3. MULTIFARIOUSNESS—*Distinct and Independent Causes—Bill to Rescind Stock Subscription and for Other Purposes—Case at Bar.*—A bill to rescind a contract of stock subscription to recover a debt against the corporation for expenses incurred by complainant, to recover for the corporation certain alleged claims against another corporation, to have specific performance of an alleged contract between complainant and another defendant, to restore to the corporation assets alleged to have been diverted by the other defendants, and for other purposes, is multifarious, containing as it does distinct and independent causes, without causal connection between the transactions.

4. MULTIFARIOUSNESS—*What Constitutes.*—It is impossible, upon the authorities, to lay down any rule or abstract proposition as to what constitutes multifariousness, which can be made universally applicable.

5. MULTIFARIOUSNESS—*Multiplicity of Suits—Causal Connection.*—While a court of equity will, in order to prevent a multiplicity of suits, and in order to attain the ends of justice, permit many things to be done in one suit, yet there are well established rules which must be followed, and there must be a causal connection between the things sought to be done.

6. STOCK AND STOCKHOLDERS—*Rescission of Subscription—Fraud.*—In order for a subscriber to stock to be entitled to a rescission of his contract for fraud, the fraud must have been committed by those who induced him to make the subscription, at the time he entered into the agreement to purchase the shares of stock.

7. STOCK AND STOCKHOLDERS—*Rescission of Subscription—Bad Management of Affairs of Corporation by its Officers—Remedy of Stockholder.*—That the officers of a corporation managed its affairs badly or even fraudulently would not entitle a subscriber to stock to a rescission of his subscription. His remedy as a stockholder in that event is to apply to the corporate officers to institute suit against the directors; failing in this the doors of a court of equity are opened to him to institute a suit calling to account such unfaithful servants.

8. CORPORATIONS—*Mismanagement by Directors—Action by Single Stockholder.*—Where the corporate directors have committed a breach of trust, either by their fraud, *ultra vires* acts, or negligence, and the corporation is unable or unwilling to institute suit to remedy the wrong, a single stockholder may institute that suit, suing on behalf of himself and other stockholders, and for the benefit of the corporation.

9. STOCK AND STOCKHOLDERS—*Rescission of Stock Subscription—Fraudulent Representations as to Condition of Another Corporation—Case at Bar.*— In the instant case the chief contention of complainant was that he should be relieved of his subscription to stock in the Guarantee Finance Company, because prior to his entrance into the same and prior to the charter and organization of the corporation, fraudulent representations were made to him concerning the organization and financial status of the Columbia Chemical Corporation in which the complainant had no interest, but whose product the Guarantee Finance Company was to sell.

   *Held:* That even if it be conceded that such false representations were made in regard to the financial standing of the chemical corporation, the bill failed to allege how this fact in any way injured the complainant as a stockholder of the finance company.

10. RESCISSION, CANCELLATION AND REFORMATION—*Fraud must be Clearly Shown.*—Fraud such as will constitute ground for the rescission of a contract must be clearly shown.

11. RESCISSION, CANCELLATION AND REFORMATION—*Fraud and Deceit—Misrepresentations.*—The misrepresentations which will sustain an action of deceit, or a plea at law, or a bill for the rescission of a contract,

must be positive statements of fact, made for the purpose of procuring the contract. They must be untrue and material, and the party to whom they are made must rely upon them, and have been induced by them to enter into the contract.

12. RESCISSION, CANCELLATION AND REFORMATION—*Stock Subscription—Materiality of Allegations of Bill—Case at Bar.*—In the instant case, a suit for rescission of a stock subscription, for expenses incurred by the complainant, and for other purposes, while many of the allegations of the bill would have been sustained upon proof, if the suit was against the officers committing the wrong, they were immaterial in the instant case as there was no connection between some of the facts alleged and the failure of the corporation.

13. STOCK AND STOCKHOLDERS—*Suit for Rescission of Subscription to Stock after Failure of the Corporation.*—Section 3843 of the Code of 1919, which provides that the trustee, assignee, or receiver of an insolvent corporation may, upon direction of a court of equity, sue at law to recover any call or assessment, does not permit a subscriber to stock to go into a court of equity and rescind his stock subscription after the insolvency of the corporation. The provisions of this statute are only applicable to actions at law brought against a subscriber by the trustee, assignee, or receiver, as the case may be, and have no application to suits for rescission, brought by the subscriber against the corporation. And before the passage of this act there is no question that a subscriber could not, after the rights of creditors had attached, bring a suit to rescind the subscription contract on the ground of fraud, after insolvency.

14. STOCK AND STOCKHOLDERS—*Suit for Rescission of Subscription to Stock after Failure of the Corporation—Case at Bar.*—Even though it be conceded that a stock subscriber is given a right to sue for a rescission of the subscription contract under section 3843 of the Code of 1919, the same could not avail the complainant in the instant case, as this was not a suit brought for the sole purpose of rescinding a contract on the ground of fraud, against the trustee, assignee, or receiver, as the sole defendant. On the contrary, the bill seeks to avoid contracts in one instance and to enforce them in another; to conserve property in one instance and to distribute it in another; to obtain a judgment for money in one instance and to compel the restitution of money in another.

15. CORPORATIONS—*Insolvency—Suit to Restore Assets—Volunteer—Case at Bar.*—In the instant case, a suit by complainant to rescind his stock subscription and to restore to the corporation certain assets alleged to have been diverted, and for other purposes, so far as the suit was for the restoration of the assets of a bankrupt corporation, complainant was a volunteer suitor and could not usurp the paramount rights of the trustee in bankruptcy.

16. CORPORATIONS—*Insolvency—Suit to Restore Assets—Volunteer—Case at Bar.*—Where complainant had no interest whatever in the affairs of a bankrupt corporation, either as an officer, stockholder, director, creditor, or debtor, he cannot maintain a suit for restoration to the corporation of assests alleged to have been diverted.

17. EQUITY—*Parties—Judgment and Decrees.*—A court cannot adjudicate the rights of a bankrupt corporation when its trustee in bankruptcy is not before the court as a party defendant; nor can a decree be entered affecting the rights of persons not made parties to the litigation.

18. REMOVAL OF CAUSES—*Transfer of Equity Suit to the Law Side of Court—Case at Bar.*—In the instant case, a suit in equity for rescission of a stock subscription and for many other purposes having no causal connection, the court properly refused to transfer the suit to the law side of the court under section 6084 of the Code of 1919, as it would have been utterly impossible to "conform" the different angles of the controversy to meet the requirements of the rules of pleading. Separate suits, the filing of proper declarations or motions for judgment, would be the simplest procedure, and a dismissal without prejudice was proper.

Appeal from a decree of the Law and Chancery Court of the city of Roanoke. Judgment for defendants. Complainant appeals.

*Affirmed.*

The opinion states the case.

*Byrd, Hopkins & O'Brien*, for the appellant.

*Hall, Wingfield & Apperson* and *Jackson & Henson*, for the appellees.

CAMPBELL, J., delivered the opinion of the court.

This is a bill in equity filed by appellant against the Guarantee Finance Company, Inc., the Columbia Chemical Corporation, H. F. Henson, Jr., trustee for Finance Company, W. J. Henson, J. T. Bandy, T. J.

Hughes, J. H. Dunkley, Bernard Mason, C. L. King, A. L. Loyd, trustee of the Guarantee Finance Company, Inc., in bankruptcy, and J. H. Carmichael.

The appellees have filed a motion of dismissal of this appeal, insisting that same was improvidently awarded.

They base their contention on two grounds:

First: "That the appellant did not comply with section 6339 of the Code of 1919, which provides that 'the person intending to apply for a transcript (of the record) shall notify the opposite party, or his counsel, if either reside in this State, of his intention, and no clerk of any court shall make out and deliver such transcript unless it is made to appear that such notice was given.'"

Second: "That the record is not certified according to law, in that the clerk has not duly authenticated the same nor certified that the notice required was given the parties or their counsel."

[1] While the notice usually appearing in a transcript of the record is not incorporated in the record before us, a notice duly served upon one of counsel for appellees has been filed with the court and is conclusive, as shown by the return thereon, that counsel were aware that the transcript would be applied for.

[2] As to the second assignment, if it was the custom of the appellate court to lose itself in the realm of technicalities, the motion to dismiss should be sustained. The record comes here merely as a copy "teste," and not in the usual form in which records are required to be presented. It is the boast, however, of the courts of this jurisdiction that litigants are entitled to have their rights determined unfettered by the harsh rules of technical construction and application.

While the method here employed is not to be commended, we are of the opinion not to dismiss the appeal,

but to proceed to a disposition of the cause upon the assignments of error as presented.

For a full discussion of the failure to comply with the statute, see *Mears & Lewis* v. *Dexter*, 86 Va. 828, 11 S. E. 538, and *N. & W. Ry. Co.* v. *Dunaway*, 93 Va. 30, 24 S. E. 698.

The bill of complaint, as amended, briefly stated, alleges that a charter was granted the Guarantee Finance Company, Inc., on the 11th day of January, 1921; that the principal business of this corporation was to sell the products of another corporation, namely, the Columbia Chemical Corporation, which had been incorporated in 1917, and was engaged mainly in manufacturing syrup for "soft drink" purposes; that the principal office of each of said corporations was in the city of Roanoke; that on the 31st day of January, 1921, a meeting of Carmichael, Hughes and others was held for the purpose of organizing the new corporation; that complainant attended this meeting and was induced by the promoters, organizers, officers, directors, who were J. T. Bandy, T. J. Hughes, J. H. Dunkley, J. H. Carmichael and W. J. Henson, to subscribe the sum of $10,000.00 for fifty shares of stock of said corporation; that he paid the sum of $2,500.00 in cash and executed his notes for the residue; that he was induced to enter into this transaction by the misleading, untrue and false representations of the directors aforesaid; that said individuals and directors withheld from complainant material information in regard to the affairs and condition of the chemical corporation as follows: That the chemical corporation had sold $300,000.00 of its capital stock, which sum, instead of going in full into the treasury of the corporation, not more than one-half of said sum had enured to the benefit of the corporation; that the said individuals were directors and officers in both corpora-

tions; that in a loan transaction with the Taka-Cola Company, W. J. Henson was negligent as an attorney and caused a loss of $10,000.00, which he should be required to repay; that when the chemical corporation was organized a certain formula acquired by said individuals at an agreed price of $15,000.00 was accepted by them as directors of the chemical corporation at a cost of $150,000.00, paid in stock; that the first $15,000.00 realized by sale of the chemical corporation stock transferred to them was devoted to paying the original price of the formula; that $85,000.00 realized subsequently from sale of said stock was divided among them while they were also directors of the chemical corporation; that they concealed and suppressed the fact that in February, 1920, J. T. Bandy agreed to pay W. O. Trainor, the holder of the patent rights of the formula, $6,000.00 for certain formula rights west of the Mississippi river; that said individuals were familiar with the financial condition of the chemical corporation; that at the meeting in January, 1922, complainant was elected a director and also treasurer of the Guarantee Finance Corporation, at an annual salary of $6,000.00 and expenses; that in June, 1921, complainant informed the directors of his withdrawal from the employ of the finance company and of his resignation as a director, and demanded a rescission of his stock subscription contract, including the return to him of the $2,500.00 cash payment thereon and his three notes, each in the sum of $2,500.00, and likewise demanded the sum of $160.00 advanced by him toward traveling expenses as well as the sum of $500.00 advanced for the purchase of a bottling plant in Norfolk, Va.; that he also demanded of the said directors of the finance company that they cancel the stock subscription contract and also repay the $2,500.00 cash payment; that the resignations of com-

plainant were accepted and his employment closed in July, 1921; that thereafter the complainant pressed for a settlement of the rescission agreement; that this settlement was not made; that one of the directors, viz.: J. H. Carmichael, entered into an agreement with complainant to restore the stock payment of $2,500.00 and to take up the three notes of $2,500.00 each; that said Carmichael executed his notes to complainant for the sum due; that Carmichael failed to pay said notes; that thereupon complainant threatened action on the Carmichael notes, whereupon W. J. Henson, J. H. Dunkley, J. T. Bandy, T. J. Hughes and J. H. Carmichael individually promised complainant to take over the Carmichael notes and to assume in writing individual liability for the amount paid in cash by complainant originally and for the return of his three notes; that this said new contract included like promises to restore the $160.00 expense money and the $500.00 advanced for the purposes of the company; that the individuals named are also liable to complainant because it was their fraudulent representations that induced the purchase of the stock; that Dunkley, Henson, Bandy and Carmichael have wholly refused to carry out their contract; that on April 30, 1921, the Bank of Pearisburg, Virginia, loaned to the finance company the sum of $10,000.00 at sixty days; that the collateral security deposited with said note to the bank consisted of notes given by subscribers to the stock of the finance company, including one note of complainant's of $2,500.00, and which collateral totaled $19,000.00; that after frequent renewals of the note of the finance company, the bank demanded payment of said note; the same not being paid, the bank sold the collateral notes at private sale for the face value of the $10,000.00 note, less some few hundred dollars which had been paid as a curtail

thereon; that the nominal purchaser was N. P. Farrier, who was acting for C. L. King, W. J. Henson and Bernard Mason; that later King, Henson and Mason returned said collateral notes to the bank; that the bank afterwards instituted suit on same; that the finance company borrowed various sums from the Mountain Trust Bank of Roanoke, putting up notes as collateral; that in default the collateral was sold and purchased by King, Henson and Mason; that on July 1, 1922, the directors of the finance company authorized J. T. Bandy to execute a deed of general assignment of the effects of the company for the benefit of its creditors, naming H. P. Henson, Jr., as trustee; that the chemical corporation has been adjudged a bankrupt; that on the 14th day of October, 1922, the Guarantee Finance Company, Inc., was adjudged a bankrupt by the United States District Court for the Western District of Virginia, and on the 20th day of November, 1922, A. L. Loyd was appointed trustee of the bankrupt's estate.

The prayer of the bill is as follows:

"In consideration of the premises, and forasmuch as your complainant is without a complete and adequate remedy save in a court of equity where matters of this kind are only and properly cognizable, your complainant prays that:

"(a) The Columbia Chemical Corporation and the Guarantee Finance Company, Inc., both being corporations organized and doing business under the laws of Virginia; and H. F. Henson, Jr., trustee for said Guarantee Finance Company; and W. J. Henson, J. T. Bandy, T. J. Hughes, J. H. Dunkley, Bernard Mason, C. L. King, A. L. Loyd, trustee of the Guarantee Finance Company, Inc., in bankruptcy, and J. H. Carmichael, be made parties respondent to this bill, and be

required to answer the same, though not under oath,. answers under oath being hereby expressly waived.

"(b) The stock subscription contract between your complainant and the Guarantee Finance Company, Inc., be rescinded and the parties thereto be placed *in statu quo, ante.*

"(c) The Guarantee Finance Company, Inc., be required to repay the $2,500.00 cash received from your complainant in respect to said contract, and to pay the $160.00 expense incurred by your complainant while in · said company's employ and to refund the $500.00 advancement made for said company by your complainant, and to reimburse said expense of $473.00 incurred as an incident to the fraud practiced upon your complainant, and with interest in each instance; and be further required to restore to your complainant as many of his said stock subscription notes as said company still possesses or controls.

. "(d) The aforesaid nominal trustee and actual custodian of and for said finance company and the said H. F. Henson, Jr., or A. T. Loyd, as aforesaid, if they or either of them have or has the same, be required to return said stock subscription notes, and to refund the aforesaid cash sums, with interest, as shown to be due and payable to your complainant.

"(e) The Columbia Chemical Corporation be required to account for and to restore to the Guarantee Finance Company or assigns any assets shown by the evidence as inequitably diverted from the latter company to the former corporation; and especially to restore the aforesaid stock subscription notes, if any are included in such illegal and improper diversions.

"(f) The individuals, Bernard Mason and C. L. King, be jointly and severally required to restore to your com-

plainant the third stock subscription note, and be required to refrain from any proceeding at law thereon.

"(g) The individuals, W. J. Henson, J. H. Dunkley, J. T. Bandy, T. J. Hughes and J. H. Carmichael, be jointly and severally directed to execute and deliver to your complainant good and sufficient written evidence of their personal undertaking to answer for the Guarantee Finance Company's performance of its contract to restore to your complainant the total cash sum of $3,160.00, with interest, and to restore his three said notes totaling a face value of $7,500.00; and thereupon, by way of complete relief, for said individuals to be directed jointly and severally to pay said sum, with interest, and, in default of return of said notes, to pay such damages as upon inquiry had may adequately protect your complainant in such regard; and to which ends that the necessary orders, judgments, and decrees be entered.

"(h) That the several defendants be required to make restitution to the Columbia Chemical Corporation and the Guarantee Finance Company, Inc., for the acts and doings hereinbefore enumerated."

To the bill, as amended, the respondents demurred, and assigned the grounds of demurrer hereinafter alluded to.

The respondents also filed their answer, denying most strenuously each and every allegation of the bill alleging fraud or improper conduct. The trial court, however, without considering the answer filed, entered a decree sustaining the demurrer, and dismissing the original and amended bills without prejudice to any action at law appellant may be advised to bring against any of the defendants.

[3] The contention of the appellees is, that the bill as amended is multifarious, in that it seeks (a) to rescind

the contract of stock subscription, made by the appellant with the Guarantee Finance Company, Inc., (b) to have the unpaid notes for the stock subscription cancelled and returned to him; (c) to recover a debt against the finance company for expenses incurred by him in and about business of the company and for monies paid by him for the company; (d) to recover for the guarantee company certain alleged claims against the Columbia Chemical Company; (e) to recover for the Columbia Chemical Company money alleged to be due by the finance company; (f) to recover for the finance company, of C. L. King and others, the sum alleged to be due on account of the sale of certain collateral by the First National Bank of Pearisburg; (g) to have specific performance of the alleged contract entered into between J. H. Carmichael and appellant in which Carmichael assumed the contract of the appellant for the purchase of stock; (h) to have specific performance of the alleged contract entered into by Bandy, Henson, Hughes and others, by which said parties agreed to assume the contract of Carmichael, and also to execute and deliver to the appellant a good and sufficient written evidence of their alleged personal undertaking to answer for the finance company's performance of an alleged contract to restore to appellant the cash sum of $3,160.00 with interest, and to restore the three stock subscription notes outstanding; and in default of this:    (i) to recover of said Bandy and others the sum of $10,660.00, being for stock subscription, money advanced, etc.; (j) to recover of W. J. Henson for the finance company the sum of $10,000.00, the amount loaned to the Taka-Cola Company, in which transaction it is alleged that the said Henson was negligent as an attorney; (k) that thus it appears that there is a misjoinder of defendants, and a misjoinder of causes of action, in that causes of action

distinct from one another, arising out of different transactions, are united in one suit; (1) that after the bankruptcy of the Guarantee Finance Company a suit for the rescission of a stock subscription contract will not lie; (m) that the effort of the appellant to recover for the benefit of the finance company is a usurpation of the rights of the trustee in bankruptcy; (n) that to permit the appellant to recover in this suit would be to decrease the assets properly held by the trustee in bankruptcy.

Upon the part of the appellant it is contended that the alleged fraud practiced upon him is embraced in a general scheme and that there is a causal connection between all the transactions and hence the bill is not amenable to the objections that it is multifarious.

[4] As to what constitutes multifariousness is a much mooted question.

In *Snavely* v. *Harkrader, et als.,* 29 Gratt. (70 Va.) 125, Judge Christian, in delivering the opinion of the court, said: "According to Lord Cottenham (and in this he has been followed by courts and text writers) it is utterly impossible, upon the authorities, to lay down any rule or abstract proposition as to what constitutes multifariousness, which can be made universally applicable. The cases upon the subject are extremely various, and the courts in deciding them seem to have considered what was convenient in particular cases rather than to have attempted to lay down an absolute rule.

"The only way of reconciling the authorities on the subject is by adverting to the fact that although the books speak generally of demurrers for multifariousness, yet in truth such demurrers may be divided into two distinct kinds.

"Frequently the objection raised, though termed multifariousness, is in fact more properly misjoinder;

that is to say, the cases or claims united in the bill are of so different a character, that the court will not permit them to be united in one record.

"It may be that the plaintiffs and defendants are parties to the whole of the transactions which form the subject of the suit, and nevertheless those transactions may be so dissimilar that the court will not allow them to be joined together, but will require distinct records. But what is more familiarly understood by the term multifariousness, as applied to a bill, is where a party is able to say he is brought as a defendant upon a record with a large portion of which and a case made by which he has no connection whatever."

[5] That the bill contains distinct and independent causes cannot be gainsaid. And while a court of equity will, in order to prevent a multiplicity of suits, and in order to attain the ends of justice, permit many things to be done in one suit; yet there are well established rules which must be followed, and there must be a causal connection between the things sought to be done.

[6] As to the contract: In order for the appellant to be entitled to a rescission of his contract, fraud must have been committed by those who induced him to make the same, at the time he entered into the agreement to purchase the shares of stock.

[7] That the officers of the Guarantee Finance Company managed its affairs badly or even fraudulently would not entitle the appellant to a rescission. His remedy as a stockholder in that event was to apply to the corporate officers to institute suit against the directors; failing in this the doors of a court of equity are opened to him to institute a suit calling to account such unfaithful servants.

[8] "Where the corporate directors have committed a breach of trust, either by their frauds, *ultra vires* acts, or

negligence, and the corporation is unable or unwilling to institute suit to remedy the wrong, a single stockholder may institute that suit, suing on behalf of himself and other stockholders, and for the benefit of the corporation." Cook on Stockholders, section 645.

There is no allegation in the bill that appellant ever called upon the corporation to institute such suit.

[9, 10] The chief contention of the appellant seems to be that he should be relieved'of his stock contract, because prior to the entrance into of the same and prior to the charter and organization of the finance company, fraudulent representations were made to him concerning the organization and financial status of the Columbia Chemical Corporation in which plaintiff had no interest. Even if it be conceded that such false representations were made in regard to the chemical corporation's financial standing, the bill fails to allege how this fact in any way injured the appellant as a stockholder of the finance company. Fraud, such as will constitute ground for the rescission of a contract, must be clearly shown.

[11] Nowhere is the law as to necessary allegations in case of fraud or deceit more clearly laid down than in the case of *Max Meadows, etc., Co.* v. *Brady*, 92 Va. 77, 22 S. E. 847. Judge Keith, delivering the opinion of the court as to necessary allegations or proof to sustain such a proceeding, says: "They show that the misrepresentations which will sustain an action of deceit, or a plea at law, or a bill for the rescission of a contract, must be positive statements of fact, made for the purpose of procuring the contract; that they must be untrue; that they are material; and that the party to whom they were made relied upon them, and was induced by them to enter into the contract."

[12] While many of the allegations of the bill should

be sustained upon proof,if the suit was against the officers committing the wrong, we cannot see the materiality of same in this cause as there is no connection between some of the facts alleged and the failure of the finance company.   For instance, it is alleged in the bill that J. T. Bandy agreed to pay W. O. Trainor for certain formula rights west of the Mississippi river, and yet has never paid the said W. O. Trainor, though he sold said rights to the finance company for $10,000.00.   We cannot see what the appellant has to do with this transaction in any particular.

[13] One of the grounds of demurrer assigned by appellees reaches the question as to whether or not the appellant can have a rescission of his stock contract after the bankruptcy of the Guarantee Finance Company.

The appellant takes the view that his remedy in this regard is controlled by section 3843 of the Code, which in part reads as follows:

"In all cases where it is necessary to resort to a court of equity for the purposes aforesaid, the court shall direct the trustee, assignee, or receiver, as the case may be, to sue at law when necessary to recover any call or assessment, and the defendant shall be entitled to a jury where the amount involved exceeds twenty dollars, and said suits shall be governed in all respects by the provisions of this act.   All pleas, defenses, and evidence which would be admissible if the company were *solvent* shall be equally admissible and shall have the same effect in law in any action brought after the insolvency of any such company."

The argument on this proposition by appellant is that even though the company be insolvent, if appellant could make the defense of fraud in the procurement of the stock subscription contract, if he were defendant, it would seem there would be no reason why he could not

have the contract rescinded upon the same ground where he elects to make himself plaintiff.

It has never been determined in Virginia that section 3843 of the Code permitted a subscriber to go into a court of equity and rescind his stock subscription after insolvency. We are of the opinion, however, that this ground of demurrer should be sustained.

The provisions of this statute are only applicable to actions at law brought against a subscriber by the trustee, assignee, or receiver, as the case may be, and have no application to suits for rescission, brought by the subscriber against the corporation. The statute is plain that the plaintiff under the provisions thereof is the trustee, assignee or receiver, who has been directed by a court of equity to institute the action. Before the passage of this act there is no question that a subscriber could not, after the rights of creditors had attached, bring a suit to rescind the contract on the ground of fraud, after insolvency.

In *Martin* v. *South Salem Land Co.*, 94 Va. 51, 26 S. E. 598, Judge Buchanan said: "Cook says upon this subject: 'In this country the effect of corporate insolvency upon the right of a subscriber to rescind his contract for fraud has not been passed upon as often as in England. The decisions, however, clearly hold that corporate insolvency is a bar to such rescission.'" Cook on Stock and Stockholders, sections 163, 164.

[14] This conclusion does not deprive the appellant of any right he may have under section 3843, it merely postpones the exercise thereof, if any he has, until a later period.

However, even though it be conceded that a stock subscriber is given a right to sue for a rescission of the contract under this section, the same could not avail the appellant, as this is not a suit brought for the sole

purpose of rescinding a contract on the ground of fraud, against the trustee, assignee, or receiver, as the sole defendant. On the contrary, the bill seeks to avoid contracts in one instance and to enforce them in another; to conserve property in one instance and to distribute it in another; to obtain a judgment for money in one instance and to compel the restitution of money in another.

[15] So far as this is a suit for the restoration of the assets of the bankrupt finance company, we hold that the appellant is a volunteer suitor and cannot usurp the paramount rights of the trustee in bankruptcy.

Therefore, this ground of demurrer should be sustained.

[16] The mere statement that the appellant has no interest whatever in the affairs of the bankrupt chemical corporation, either as an officer, stockholder, director, creditor, or debtor, is sufficient answer to clause "h" of the prayer of the bill, wherein it is asked that the several defendants be required to make restitution to the chemical corporation for monies alleged to have been diverted from its treasury. To sustain the bill would produce confusion beyond conception.

[17] It is inconceivable how the court could adjudicate the rights of the Columbia Chemical Corporation, a bankrupt, when its trustee in bankruptcy is not before the court as a party defendant; nor do we see how there could be a recovery of Bandy and others for the benefit of the finance company, a bankrupt, when the trustee is the plaintiff-litigant in another forum; nor have we arrived at a satisfactory conclusion how a decree could be entered against King, Mason and Henson, without making the Bank of Pearisburg a party to the litigation.

Measured by the rule laid down in *Snavely* v. *Harkrader, supra,* we think it can be readily seen that the ac-

tion of the trial court in sustaining the demurrer to the bill as amended is plainly right.

[18] We are further of the opinion that the action of the trial court in refusing to transfer this suit to the law side of the court, under the provision of section 6084 of the Code of 1919, is without error.

That section provides: "No case shall be dismissed simply because it was brought on the wrong side of the court, but whenever it shall appear that a plaintiff has proceeded at law when he should have proceeded in equity, or in equity when he should have proceeded at law, the court shall direct a transfer to the proper forum, and shall order such change in, or amendment of, the pleadings as may be necessary to conform to the proper practice; * *."

That portion of the decree which deals with this phase of the controversy is as follows: "That this is not a cause which should have been sent to the law side of the court and pleadings there reformed by reason of the numerous separate transactions with different defendants, that the simplest method of determining this controversy is to dismiss the bill as amended without prejudice to any action at law the plaintiff may be advised to bring against any defendant."

In this case it would be utterly impossible to "conform" the different angles of the controversy to meet the requirements of our rules of pleading. That separate suits—the filing of proper declarations or motions for judgment—is the simplest way is beyond doubt.

The decree of the court is affirmed.

*Affirmed.*