PRESENT: All the Justices

ALEXANDRIA REDEVELOPMENT
AND HOUSING AUTHORITY                           OPINION BY
                                      JUSTICE D. ARTHUR KELSEY
v.  Record No. 141085                      June 4, 2015

LORAIN WALKER

          FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                      James C. Clark, Judge

     In the circuit court, Lorain Walker filed a complaint

alleging that she had been improperly discharged by the

Alexandria Redevelopment and Housing Authority ("ARHA").  The

circuit court denied her requests for reinstatement and money

damages but held that she was entitled to have her claims

arbitrated under ARHA's grievance procedure.  ARHA appeals,

arguing that the circuit court misapplied Code § 15.2-1507.

We agree and reverse.

                              I.

     Walker worked for ARHA for several years before being

discharged on September 23, 2010, for "grossly" violating

ARHA's "absenteeism and tardiness policies."  Walker filed a

grievance seeking further review of her discharge.  ARHA's

grievance policy included various stages of review that, when

applicable and timely requested, culminated in a hearing by an

independent arbitrator.

     After Walker's grievance passed the initial stages of

review, ARHA informed her in February 2011 that a panel of

potential arbitrators had been requested from the Federal Mediation and Conciliation Service ("FMCS").  ARHA explained to Walker that when the parties received the names on the panel, she must participate in alternating strikes until a single arbitrator was chosen.  Under ARHA's grievance policy, this process must be accomplished "[w]ithin thirty days after receipt of the panel."

After ARHA had submitted a request to FMCS for a panel of arbitrators, it followed up with Walker by emails to her on February 7 and 15, 2011.  Without addressing the panel of potential arbitrators, Walker replied via her smartphone on February 15:  "I am seeking counsel so I can go to court." (Emphasis added.)  Within minutes of Walker's message, ARHA's counsel replied, asking her to clarify whether her reference to court meant that she was "no longer interested in arbitration of [her] discharge."  Walker never replied to this question.

Several weeks later, ARHA reminded Walker that the thirty-day period would expire on March 17, 2011.  If she was still interested in submitting her grievance to arbitration, ARHA stated, Walker needed to participate in the arbitrator selection process, which ARHA offered to complete with her by telephone if she would provide her phone number and an acceptable time to speak.  If Walker continued to be

2

unresponsive, ARHA warned her that it would conclude that she was "no longer interested in pursuing arbitration."

After the March 17, 2011 deadline passed without any response from Walker, ARHA informed her that "effective immediately ARHA will treat your request for arbitration as withdrawn." Nevertheless, the next day Walker sent a cryptic email from her smartphone stating simply that she was "interested in arbitration" and providing her phone number. She offered no explanation, however, for her failure to participate in the arbitrator selection process prior to the expiration of the grievance procedure's thirty-day deadline.

Four days after the deadline to select an arbitrator, Walker wrote to ARHA objecting, for the first time, to the use of emails to communicate - although she had at various times used a smartphone to reply to emails ARHA had sent. In a separate letter of the same date, she stated that she had not received a copy of the roster of prospective arbitrators. In reply, ARHA notified her that her arbitration request had already been deemed withdrawn given her failure to respond by the thirty-day deadline, and ARHA further noted that she had never before raised this issue although she had numerous opportunities to do so. Walker made no response.

Nearly a year later, Walker filed a complaint in circuit court in February 2012, claiming that ARHA, "through its

counsel," had "unilaterally determined that the Complainant had withdrawn her request for arbitration" of her grievance. Code § 15.2-1507(A)(7)(b), however, required Walker to appeal "within 30 days of the compliance determination." Walker ultimately nonsuited that action.

Walker re-filed suit against ARHA in February 2013 repeating the same allegations previously asserted in the nonsuited complaint. In addition to requesting an award of $300,000 in money damages, she requested an injunction ordering ARHA to reinstate her to her prior position. Neither her initial nor amended complaints in this action specifically requested a judicial order compelling arbitration of her grievance.

On ARHA's motion for summary judgment, the circuit court denied Walker's claim for money damages and her request for reinstatement. The court, however, ordered ARHA to arbitrate Walker's grievance, opining that it believed that the parties had a "miscommunication . . . as opposed to a compliance issue." "I may be wrong," the judge explained, "but I'm sticking with it." ARHA appeals, arguing that the court erred as a matter of law.

## II.

Before addressing the merits of this appeal, we must first answer Walker's contention that the appeal should be

4

dismissed because ARHA's notice of appeal was not timely filed.

Rule 5:9(a) requires a notice of appeal to this Court to be filed in the circuit court within thirty days after the entry of the final or otherwise appealable order.  ARHA relied upon Federal Express to deliver the notice of appeal in this case.  The courier placed the notice of appeal in the hands of a clerk in the land records department of the clerk's office of the circuit court on May 15, 2014, exactly thirty days after the entry of the order ARHA seeks to appeal.

The clerk, however, did not stamp the notice of appeal as "filed" until the next day, May 16, 2014, thus indicating that ARHA's notice of appeal was untimely under Rule 5:9(a).  When ARHA brought this to the attention of the circuit court and produced uncontroverted evidence of timely filing, the court entered an order directing the clerk to correct the docket to reflect that the notice of appeal was in fact filed on May 15, 2014.  Walker did not appeal the trial court's corrective order and instead filed a motion to dismiss ARHA's appeal.

In her motion to dismiss, Walker argues that the circuit court's order correcting the filing date was erroneous as a matter of law because a written document is filed only when the clerk of court stamps it as filed.  ARHA contends that we need not consider Walker's argument because she did not

challenge the court's correction order by filing a cross-appeal or by assigning cross-error in her brief in opposition. See Rule 5:18(c).

On this subject, the governing principles are easy to repeat but sometimes difficult to apply. No cross-appeal is necessary when an appellee seeks to support a judgment on alternative legal grounds, including those expressly rejected by the trial court and those raised for the first time on appeal. See Perry v. Commonwealth, 280 Va. 572, 581, 701 S.E.2d 431, 437 (2010) (citing Washington v. Confederated Bands & Tribes of Yakima Indian Nation, 439 U.S. 463, 476 n.20 (1979), and United States v. American Ry. Express Co., 265 U.S. 425, 435 (1924)); accord Jennings v. Stephens, 135 S. Ct. 793, 798 (2015).[1] Cross-appeals are necessary only when an appellee seeks to modify or otherwise change a favorable judgment "with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary." Jennings, 135 S. Ct. at 798 (quoting American Ry. Express Co., 265 U.S. at 435).[2]

---

[1] See also Reynolds v. American Nat'l Red Cross, 701 F.3d 143, 155-56 (4th Cir. 2012). This conclusion follows from the axiom that a "prevailing party seeks to enforce not a [trial] court's reasoning, but the court's judgment." Jennings, 135 S. Ct. at 799 (emphasis in original).

[2] Cross-error in Virginia practice is treated exactly the same. The only difference between the two is that the

Because we strive to decide cases on the "best and narrowest grounds available," McGhee v. Commonwealth, 280 Va. 620, 626 n.4, 701 S.E.2d 58, 61 n.4 (2010) (quoting Air Courier Conference v. American Postal Workers Union, 498 U.S. 517, 531 (1991) (Stevens, J., concurring)),[3] we need not determine whether Walker's argument should have been asserted by way of a cross-appeal or an assignment of cross-error. Here, settled principles of law defeat Walker's argument on the merits.

When not filed electronically, a pleading is filed when it is physically delivered to the clerk of court. Rule 3:3 ("The clerk shall receive and file all pleadings when tendered." (emphasis added)); Mears v. Mears, 206 Va. 444, 446, 143 S.E.2d 889, 890 (1965) (holding that a paper "is 'filed' when delivered to the clerk by the agent selected by counsel"); accord W. Hamilton Bryson, Virginia Civil Procedure § 6:01, at 6-3 (4th ed. 2005).[4]

---

assignment of cross-error, unlike a freestanding cross-appeal, is jurisdictionally dependent on the initiating appeal. If the appellant's petition for appeal is denied, assignment of cross-error by the appellee will not be granted or considered further by the Court. See Rule 5:18(c)(4)(i).

[3] See also Miles v. Commonwealth, 274 Va. 1, 2, 645 S.E.2d 924, 925 (2007) (Kinser, J., concurring) (quoting with approval Luginbyhl v. Commonwealth, 48 Va. App. 58, 64, 628 S.E.2d 74, 77 (2006) (en banc)).

[4] Traditionally, the term "pleadings" included only "the written statements of the positions, i.e., the claims and the

7

As one court succinctly put the point:

> The word "filed" . . . is, as applied to court proceedings, a word of art, having a long established and well understood meaning . . . . It requires of one filing . . . merely the depositing of the instrument with the custodian for the purpose of being filed. . . . [I]t charges him with no further duty, subjects him to no untoward consequences as a result of the failure of the custodian to do his duty, by placing the instrument on the file, or as in modern practice placing his file mark on the instrument.

Milton v. United States, 105 F.2d 253, 255 (5th Cir. 1939).[5]

It is true that a circuit court clerk's "filed" stamp is usually conclusive evidence of the filing date, see Mears, 206 Va. at 445, 143 S.E.2d at 890, but that does not render the timing of the filing incontrovertible. When a party contests

---

defenses, of the parties to the litigation." Bryson, supra, § 6:02[1], at 6-4. A notice of appeal technically would not fit within the scope of the traditional definition. See, e.g., Coleman v. Thompson, 501 U.S. 722, 742 (1991) (characterizing a notice of appeal as "a purely ministerial document" (citing Rule 5:9)); Mears, 206 Va. at 447, 143 S.E.2d at 891 (referring to it as a "paper" to be filed with the court). Even so, "there are other definitions of what a pleading is for different purposes in Virginia law," Kent Sinclair & Leigh B. Middleditch, Jr., Virginia Civil Procedure § 11.6, at 873 (6th ed. 2014), and the distinctions are immaterial for the purpose of determining when a notice of appeal has been filed.

[5] Cf. Rules 5:5(c), 5A:3(d) (governing appellate filings). The policy objectives for these rules are "(1) to circumvent the inconvenience of having to personally appear in the Clerk's office to effect a filing, and (2) to protect a party from those delays which often occur in the regular dispatch of mail and naturally are outside a party's control." Reese v. Wampler Foods, Inc., 222 Va. 249, 252-53, 278 S.E.2d 870, 872 (1981).

8

the clerk's date of filing, the circuit court retains the authority under Code § 8.01-428(B) to take evidence and to make factual findings approving or disapproving the clerk's filing date. A litigant, after all, "should not be denied a review simply because of an error made by a ministerial officer of the court." Leigh v. Commonwealth, 192 Va. 583, 587, 66 S.E.2d 586, 589 (1951).[6]

That is just what happened here. ARHA brought the discrepancy to the attention of the circuit court and irrefutably established the date of physical delivery and, thus, the true date of filing. The circuit court prudently issued a correction order so that the record would "speak the truth." Jefferson v. Commonwealth, 269 Va. 136, 140, 607 S.E.2d 107, 110 (2005); see also Council v. Commonwealth, 198 Va. 288, 292-93, 94 S.E.2d 245, 248 (1956) (clarifying that "the purpose of a nunc pro tunc entry is to correct mistakes of the clerk . . . so as to make the record show what actually took place").[7] Because the correction order merely confirms

_____

[6] See also Avery v. County Sch. Bd., 192 Va. 329, 331, 64 S.E.2d 767, 769 (1951) (recognizing that "[t]his court has always exercised its discretion, so far as it legally could, to protect litigants against the consequences of the failure of a public officer to perform ministerial duties"); Brame v. Guarantee Fin. Co., 139 Va. 394, 398, 124 S.E. 477, 478 (1924).

[7] See also Rule 1:9 ("All steps and procedures in the clerk's office touching the filing of pleadings and the

the factual timeliness of ARHA's notice of appeal, we deny

Walker's motion to dismiss.[8]

### III.
### A. The ARHA Grievance Procedure

Under Virginia law, a local redevelopment and housing

authority has the option to include its employees in the

locality's grievance procedure[9] or to adopt its own procedure

specifically applicable to the authority's employees.  See

Code § 15.2-1507(A)(4).  ARHA elected to adopt its own

procedure.

The ARHA grievance procedure takes a grievant through

various, informal stages of dispute resolution.  Step 1

involves a written response by ARHA to the assertions in the

grievance.  If dissatisfied with this response, the grievant

may challenge it in Step 2, which includes a review by the

department director.  Step 3 involves a written appeal to

maturing of suits or actions may be reviewed and corrected by
the court."); cf. Martin P. Burks, Common Law & Statutory
Pleading & Practice § 50, at 108 (T. Munford Boyd, ed., 4th
ed. 1952) (noting that a clerical "mistake" of the clerk
"cannot prejudice" the litigants).

[8] This appeal does not require us to address whether, and
to what extent, the failure to tender certain fees renders a
physically delivered pleading incapable of being filed.  See
generally Landini v. Bil-Jax, Inc., Record No. 140591 (Jan.
30, 2015) (unpublished).

[9] Under Code § 15.2-1507(A), a locality may adopt its own
employee grievance procedure consistent with Code § 15.2-1506
or be deemed to have adopted the grievance procedure
applicable to state employees, Code § 2.2-3000 et seq.

ARHA's chief executive officer.  The final stage initiates a formal arbitration hearing in which the arbitrator has authority to enter a binding determination.

Both parties have compliance duties during the final stage.  The arbitration procedure details the process of selecting an arbitrator, scheduling a hearing, conducting an evidentiary hearing, and obtaining a ruling from the arbitrator.  The first compliance duty is selecting an arbitrator.  The grievance procedure specifies that both parties shall pick an arbitrator by striking names from a panel of potential arbitrators provided by the independent arbitration service.  This task must be completed "[w]ithin thirty days" of receiving the panel.  After the process of striking the names from the panel leaves one arbitrator remaining, the arbitration may be scheduled.

B. Judicial Review of Compliance Determinations

Judicial review of the grievance procedure is sharply limited by Code § 15.2-1507.  With respect to procedural noncompliance, the statute provides:

> After the initial filing of a written grievance, failure of either party to comply with all substantial procedural requirements of the grievance procedure, including the panel or administrative hearing, without just cause shall result in a decision in favor of the other party on any grievable issue, provided the party

11

> not in compliance fails to correct the noncompliance within five workdays of receipt of written notification by the other party of the compliance violation.

Code § 15.2-1507(A)(7)(a) (emphasis added). The chief administrative officer or his designee "shall determine compliance issues." Code § 15.2-1507(A)(7)(b). If the grievant objects to the compliance determination, she may seek judicial review "by filing [a] petition with the circuit court within 30 days of the compliance determination." Id.

## C. The Circuit Court's Holding

In this case, Walker did not request an order of arbitration in either her complaint or amended complaint. Instead, she sought money damages and an injunction reinstating her to her former position. Though this alone would ordinarily be enough to put in question the circuit court's arbitration order,[10] ARHA limits its appellate challenge of the arbitration order to the circuit court's

---

[10] "'Pleadings are as essential as proof, and no relief should be granted that does not substantially accord with the case as made in the pleading.'" Ted Lansing Supply Co. v. Royal Aluminum & Constr. Corp., 221 Va. 1139, 1141, 277 S.E.2d 228, 229-30 (1981) (quoting Bank of Giles Cnty. v. Mason, 199 Va. 176, 180, 98 S.E.2d 905, 907 (1957)). Therefore, "'[n]o court can base its decree upon facts not alleged, nor render its judgment upon a right, however meritorious, which has not been pleaded and claimed.'" Id. at 1141, 277 S.E.2d at 230 (quoting Potts v. Mathieson Alkali Works, 165 Va. 196, 207, 181 S.E. 521, 525 (1935)).

12

failure to apply the thirty-day appeal deadline imposed by Code § 15.2-1507(A)(7)(b).

Both parties agree that, in March 2011, ARHA declared Walker to be noncompliant with the grievance procedure and deemed her request for arbitration to be withdrawn. See, e.g., Appellee's Br. at 6; Oral Argument Audio at 2:35 to 3:00. Walker specifically alleged that ARHA, "through its counsel," made the compliance determination.[11] Walker, however, waited nearly a year to file her first complaint seeking judicial review - far beyond the thirty-day deadline imposed by Code § 15.2-1507(A)(7)(b).

The circuit court decided not to apply the thirty-day deadline on the ground that this case involved a mere "miscommunication between the parties as opposed to a compliance issue." We do not understand the distinction. Walker claimed that she was confused about the arbitrator selection process and that her confusion resulted in her alleged noncompliance. She did not assert, nor could she, given her pleading, that ARHA did not declare her noncompliant and deem her arbitration request to be withdrawn. It was just

---

[11] At oral argument on appeal, Walker's counsel conceded that ARHA's counsel acted as the designee of ARHA's chief executive officer for purposes of making this determination. See Oral Argument Audio at 20:25 to 20:57.

13

this determination that Walker attacked in her amended complaint.

The circuit court's reasoning conflated the cause of Walker's noncompliance (an alleged miscommunication) with its effect (a determination triggering the thirty-day window to petition the circuit court for review). The two are conceptually separate. The statutory deadline could not be set aside on the ground that the circuit court believed that Walker had a valid excuse for being noncompliant. If that were enough, the deadline would be pointless - for it would only impose a procedural bar on challenges destined to fail on the merits anyway. See generally Winslow v. Commonwealth, 62 Va. App. 539, 546, 749 S.E.2d 563, 567 (2013) ("It is never enough for the defendant to merely assert a winning argument on the merits - for if that were enough procedural default 'would never apply, except when it does not matter.'" (citation omitted)).[12]

_____

[12] Finally, we note that Walker did not file in the circuit court an "application" seeking to enforce a contractual arbitration right under the Virginia Uniform Arbitration Act, specifically, Code § 8.01-581.02(A). Nor did the circuit court issue an interlocutory order compelling arbitration under that statute or "stay" the proceeding under Code § 8.01-581.02(D) for purposes of retaining jurisdiction under Code §§ 8.01-581.010 and 8.01-581.011. Instead, the circuit court issued a "FINAL ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT," stating that "the proceedings in this matter are otherwise terminated and this order is Final." Neither Walker nor ARHA questions our

IV.

We deny Walker's motion to dismiss, finding no error in the circuit court's order correcting the filing date of ARHA's notice of appeal.  We hold that the circuit court erred, however, in ordering ARHA to arbitrate Walker's grievance.  We thus reverse and enter final judgment in favor of ARHA.

<u>Reversed and final judgment.</u>

---

appellate jurisdiction over the final order entered in this case.  Nor do we.  A circuit court order cannot create its own immunity to appeal by granting relief not requested in the pleadings and by entering a final order compelling arbitration outside the scope of the Virginia Uniform Arbitration Act. <u>Cf.</u> <u>Seguin v. Northrop Grumman Sys. Corp.</u>, 277 Va. 244, 672 S.E.2d 877 (2009) (holding that an interlocutory decree ordering arbitration pursuant to the Virginia Uniform Arbitration Act is not an appealable final order under Code § 8.01-670(A)(3) and not an appealable interlocutory order under Code § 8.01-581.016).

15