# Richmond.

WEISIGER V. RICHMOND ICE MACHINE CO.

NOVEMBER 8th, 1894.

Absent, Fauntleroy, J.

1. ANSWER—*Withdrawal—Demurrer.*—Where there has been no unreasonable delay in making the motion, the court may, at its discretion, allow answer to be withdrawn and demurrer filed to the bill.

2. STOCK SUBSCRIPTIONS—*Cancellation—Doctrine.*—Contract to purchase stock, induced by fraudulent representations, is not void, but only voidable at purchaser's option. Where rights of creditors are concerned, he must use reasonable care and vigilance in discovering fraud, and upon its discovery must promptly repudiate the purchase. If after discovering it, he does any act inconsistent with such disaffirmance, he will be held to have waived the fraud.

3. BILL TO CANCEL—*Case at bar.*—In the case here, the bill, as set forth in the opinion: *held*, bad on demurrer.

Appeal from decree of chancery court of the city of Richmond, rendered July 26, 1892, in a suit in equity wherein E. W. Weisiger and others were plaintiffs and the Richmond Ice Machine Company and others were defendants. Opinion states the case.

*William J. Clopton* and *J. H. Webb Peploe*, for appellants.

*William P. DeSaussure* and *Robert Stiles*, for appellees.

LEWIS, P., delivered the opinion of the court.

The bill was filed by the appellants for a recision of their subscriptions to the stock of the defendant company, and to recover back the money paid on account thereof on the ground that they had been severally induced to subscribe by fraudulent representations. The chief ground of the charge of fraud was a written statement put forth and signed by the secretary and treasurer of the company, purporting to have been taken from the books of the company, which represented the company to be in a prosperous condition, with a net surplus (*i. e.*, an excess of resources over liabilities) of $27,933 67.

The subscriptions were made in September, 1890, and the suit was commenced about a year thereafter.

The bill states that "some months" after they had subscribed, the complainants for the first time learned that they had been deceived by reason of the omission from the said written statement of the fact (which was studiously concealed from them) that there was a liability on the company to one Johnson for paid-up stock to the amount of $27,000, and, that upon their asking an explanation, the officers of the company " again succeeded in pulling the wool over complainants' eyes " by the representation that the company had earned, and would forthwith declare a dividend of forty per cent. " The matter was then allowed to proceed," the bill further states, " without, however, any dividend having been declared," although the complainants, some time afterwards, demanded a dividend. The bill then goes on to aver that various subsequent statements were made, each in its turn, showing the company to be in a less flourishing condition than its predecessors, and all containing misleading and fraudulent representations; and, further, that the company is, in fact, in a state of hopeless insolvency.

The company and several of its officers were made defendants, all of whom answered. Afterwards, and before any further proceedings were had in the cause, the defendants asked and obtained leave, over the objection of the plaintiffs,

to withdraw their respective answers and to demur, which was done, whereupon the demurrers were sustained and the bill dismissed by the decree complained of.

The objections that have been urged to this decree are (1) that the court erred in allowing the defendants to demur after they had answered, and (2) that, independent of this consideration, the demurrers ought to have been overruled.

As to the first point, it is enough to say that it was within the discretion of the court to allow the defendants to withdraw their answers and to demur, and as there was no unreasonable delay in moving for leave to do so, we are of opinion that the objection is not well founded.

Then the question is, Does the case stated in the bill entitle the complainants to the relief sought? We think not; and this is so apart from any merely technical objection to the bill for vagueness or otherwise.

A contract to purchase stock induced by fraudulent representations is not void, but only voidable at the option of the purchaser. If, as was said in *Bosher* v. *Richmond and Harrisonburg Land Co.*, 89 Va., 455, the representations are made by promoters, or by a prospectus, the innocent subscriber may rely upon them without investigation. Ordinarily, however, where the rights of creditors are concerned, he must exercise reasonable care and vigilance in discovering the fraud, and in any case he must, upon discovery of the fraud, promptly repudiate the purchase. He has no right to hold on to the stock, in the hope or expectation of realizing a profit therefrom, and failing in this, to disaffirm the contract. Hence, if after discovering the fraud, he demands or receives a dividend, or continues to act as a stockholder, or does any act inconsistent with an intention to disaffirm the contract, he will be held to have waived the fraud.

As was said by the Master of the Rolls in Ashley's case, L. R., 9, Eq., 263, " The leading principle in all these cases is this : " A man must not play fast and loose ; he must not say,.

' I will abide by the company, if successful, and I will leave the company if it fails'; and, therefore, whenever a misrepresentation is made of which any one of the shareholders has notice, and can take advantage to avoid his contract with the company, it is his duty to determine at once whether he will depart from the company or whether he will remain a member." The same principle has been recognized in numerous cases, English and American. Indeed, it is fundamental, and rests upon a two-fold reason, viz. : (1) Because the subscriber's remaining in the company may induce others, upon the credit of his name, to become members; and (2) because it may likewise induce others to give credit to the company for the same reason. *Ogilvie* v. *Knox Ins. Co.*, 22 How., 380; *Upton* v. *Trililerock*, 91 U. S., 45 ; *Upton* v. *Englehart*, 3 Dill., 496 ; 1 Cook on Stock, Stockholders and Corp. Law (3d ed.), secs. 151, 160, 165, and cases cited.

Tried by this test, the decree in the present case must be affirmed. The bill admits that after the complainants discovered the fraud by which they were induced to subscribe for the shares in question, they " allowed the matter to proceed," (or, in other words, they waived the fraud, and elected to remain in the company), upon being told, when an explanation was demanded, that a large dividend would soon be declared; and although they afterwards unsuccessfully demanded a dividend, and although the condition of the company was shown in a less favorable light by each successive statement that was subsequently made, one of which, at least, was furnished not later than March 9, 1891, yet it was not until some time in the ensuing September, and after the company had become " hopelessly insolvent," that the bill was filed. In the mean time rights of creditors had intervened, and the application to rescind the contract in question was consequently too late. *Barnett* v. *Barnett*, 83 Va., 504, 510; 2 Pom. Eq., sec. 897.

DECREE AFFIRMED.