# Staunton.

## MRS. B. B. IRBY v. JACOB HARVEY.

### September 17, 1925.

1. BILLS, NOTES AND CHECKS—*Note Acquired after Maturity—Defenses—Case at Bar.*—In the instant case, an action on a note given in payment for a subscription for stock, plaintiff acquired the note after its maturity from the corporation. He therefore took it with all of its infirmities, and, if a defense of fraud could be interposed were the corporation plaintiff, it could also be asserted against plaintiff as its assignee after maturity.

2. BILLS, NOTES AND CHECKS—*Note Given by Subscriber for Stock—Fraud—Laches—Case at Bar.*—In the instant case, an action on a note given by defendant when she subscribed for stock in a corporation, defendant pleaded false representations and failure of consideration.

   *Held:* That after the corporation had obtained credit on the strength of this note, and after its insolvency, it was too late for defendant to plead the original fraud in the procurement of her note long after it became due, and without ever having sought a rescission of her contract or given any previous notice of such a claim.

3. CORPORATIONS—*Stock Subscriptions—Fraud in Procurement.*—A stock subscription induced by fraud is not void but merely voidable. While an innocent subscriber may rely upon such representations, and thereafter be absolved if they are false, he cannot, after insolvency of the company and when the rights of its creditors have supervened, repudiate his contract, if he has failed either to exercise reasonable care to discover the fraud, or if, upon its discovery, he has neglected to act promptly.

4. CORPORATIONS—*Stock Subscriptions—Fraud in Procurement—Rights of Creditors of Corporation.*—Conceding that a stockholder in a corporation, whose subscription has been obtained by fraud, is an innocent victim, it must also be conceded that the creditors of the insolvent corporation who have relied on the stock subscriptions are equally innocent, so that the burden should fall upon the subscribing stockholder, on the faith of whose subscription the corporation has obtained the credit.

Error to a judgment of the Corporation Court of

the city of Roanoke in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*T. W. Messick*, for the plaintiff in error.

*Hughson & Showalter*, for the defendant in error.

PRENTIS, P., delivered the opinion of the court.

Mrs. B. B. Irby (defendant) is here complaining of a judgment in favor of Harvey, based upon a negotiable note executed by her when she subscribed for $250 par value of Class A stock of the First National Coal Corporation. The note became due in December, 1922. In January, 1923, there was a stockholders' meeting, at which the officials reported the need of $6,500 to pay the current indebtedness and enable the company to conduct a profitable business. At that meeting it was determined to execute the company's note for this amount and pledge the $8,300 unpaid notes of the stockholders given for this stock, of which Mrs. Irby's note was one, as collateral security therefor. Having failed to negotiate this $6,500 note with one of the banks in Roanoke, Harvey (plaintiff), at the urgent insistence of the officers and stockholders, mortgaged his real estate to raise the amount said to be needed, and took therefor the said $6,500 note of the company and the defendant's $250 note along with the other unpaid notes of the stockholders, so pledged as collateral therefor. Several thousand

dollars of these stockholders' notes are worthless, the principal debt has not been paid, and the corporation has become insolvent.

After all these occurrences and this insolvency, when Harvey, as the holder of the defendant's stock subscription note, demanded payment thereof, it was refused, and then in May, 1923, for the first time the defendant claimed that her subscription and note had been obtained by fraud and induced by certain false representations as to material facts. It is apparent that she had known of all the facts relied on to establish such fraud for some time prior to that date, but she had remained both silent and inactive.

The defendant pleaded these alleged false representations and failure of consideration.

There was a jury trial, a verdict for the defendant which was set aside, and then the final judgment entered for the plaintiff which is under review.

[1] In our view of the case it is unnecessary to relate the testimony which tends to show the alleged fraudulent and false representations, or to consider it further. It must, of course, be conceded that the plaintiff having acquired the note after its maturity, took it with all of its infirmities, and that if this defense could be interposed were the insolvent company plaintiff, it can also be asserted against this plaintiff, Harvey, as its assignee after maturity.

[2] This indicates the crucial and controlling question which the uncontroverted facts present. Could this defendant, who was subscriber to the stock of the corporation, after it had obtained credit on the faith of her note, and thereafter become insolvent, then plead the original fraud in the procurement of her note long after it became due, without ever having

sought a rescission of her contract or given any previous notice of such a claim?

Questions like this have frequently arisen in England, as well as in this country, and have generally, if not always, received a negative answer.

[3] *Weisiger* v. *Richmond Ice Machine Co.*, 90 Va. 797, 20 S. E. 361, was a stronger case on the facts for the stockholders than this is, and the defense of fraud was denied because of their *laches* and ratification by conduct. A stock subscription induced by fraud is not void but merely voidable. While an innocent subscriber may rely upon such representations, and thereafter be absolved if they are false, he cannot, after insolvency of the company and when the rights of its creditors have supervened, repudiate his contract, if he has failed either to exercise reasonable care to discover the fraud, or if, upon its discovery, he has neglected to act promptly. He cannot safely wait to take the chance of the company's success, for if he waits too long and the company fails, after obtaining credit on the faith of his subscription, he loses because of the superior equity of the creditor of the insolvent corporation. This because the capital raised or promised by the stockholders is the primary source of this credit of the corporation.

In the case cited, this is said: "As was said by the Master of the Rolls in *Ashley's Case*, L. R., 9 Eq., 263, 'the leading principle in all these cases is this: "A man must not play fast and loose; he must not say, 'I will abide by the company, if successful, and I will leave the company if it fails;' and, therefore, whenever a misrepresentation is made of which any one of the shareholders has notice, and can take advantage to avoid his contract with the company, it is his duty to determine at once whether he will depart

from the company or whether he will remain a member.'" The same principle has been recognized in numerous cases, English and American. Indeed, it is fundamental, and rests upon a two-fold reason, viz.: (1) Because the subscriber's remaining in the company may induce others, upon the credit of his name, to become members; and (2) because it may likewise induce others to give credit to the company for the same reason. *Ogilvie* v. *Knox Ins. Co.*, 22 How. 380, 16 L. Ed. 349; *Upton* v. *Tribilcock*, 91 U. S. 45, 23 L. Ed. 203; *Upton* v. *Englehart*, 3 Dill., 496, Fed. Cas. No. 16, 800; 1 Cook on Stock, Stockholders and Corp. Law (3rd ed.), secs. 151, 160, 165, and cases cited."

[4] This rule is discussed elaborately and enforced in *Martin* v. *South Salem Land Co.*, 94 Va. 48, 26 S. E. 591, where the arguments therefor with the many supporting authorities are quite convincing. It is based upon reason and founded on justice. Conceding the stockholder to be an innocent victim, it must also be conceded that the creditors of the insolvent corporation who have relied on the stock subscriptions are equally innocent, so that the burden should fall upon the subscribing stockholder, on the faith of whose subscription the corporation has obtained the credit.

Those who are interested or curious to pursue the investigation will find the cases from many jurisdictions collected in 7 R. C. L. pp. 240-241, sections 213-214; 14 C. J., pp. 598-599.

Our conclusion in this case is that even if the original fraud in the procurement of her subscription should be conceded, the defendant has waived her rights by failing to assert them promptly upon the discovery of the fraud, and the corporation in the meantime having become insolvent, she cannot now be per-

mitted to deny her liability on her contract so as to defeat this creditor who has innocently and without notice of the alleged fraud extended credit to the company on the faith of her stock subscription contract.

*Affirmed.*