## Staunton.

J. N. AKERS, S. C. CONDUFF & SON, L. W. DICKERSON, J. M. HARMAN AND OTHERS v. RADFORD STATE BANK, INC., AND OTHERS.

September 19, 1929.

Absent, West, J.

The opinion states the case.

*Howard & Howard, V. M. Sowder, W. D. Tompkins, Proffit & Weeks, Henson & Henson* and *G. W. Agnew*, for the appellants.

*H. C. Gilmer*, for the appellees.

Prentis, C. J., delivered the opinion of the court.

We shall not undertake to state all of the facts in detail or to discuss all of the legal propositions which are referred to by counsel in this cause. We shall, however, undertake to refer to those facts which we consider decisive and to certain well established legal doctrines which determine the issues presented by this record.

The appellants subscribed to the stock of the Radford-Willis Southern Railway Company. The appellees are creditors of that insolvent corporation. The original agreement of these subscribers to the stock is expressed in the subscription form which they signed, which reads:

"SUBSCRIPTION FORM
"to the stock of the
"RADFORD-WILLIS SOUTHERN RAILWAY.

"I hereby subscribe to ........ shares of the capital stock of the Radford-Willis Southern Railway with a par value of $100.00 per share and agree to pay for same as follows: Two per cent when contract for com-

pletion of the said railroad is let and bond is given by a reputable contractor and approved by the board of directors; three per cent in fifteen days thereafter; five per cent in thirty days thereafter and ten per cent on the first day of each month thereafter until the entire subscription is paid. It being understood that this subscription is binding only in case the entire $50,000.00 (Floyd's part), is raised and the construction of the railway assured for Floyd county."

These subscribers are generally spoken of as the "Floyd county subscribers." The purpose of the company was to build a railroad from Radford to Willis, in Floyd county, and the Radford subscribers made subscriptions on similar forms, except that the last clause reads: "* * It being understood that this subscription is binding only in case the entire $50,000.00 (Radford's part) is raised and the construction of the railway assured for Radford."

After at least $48,000.00 of subscriptions had been obtained for the Floyd county end of the line and at least $62,000.00 for the Radford end of the line, making a total of $112,000.00, difficulties arose. The Floyd subscribers became dissatisfied and claimed that their stock subscriptions had been obtained by fraudulent misrepresentations and promises with reference to the execution of a bond assuring the construction of the road, and the stockholders meeting at which these complaints were made adjourned in disorder. Thereafter, June 26, 1915, the directors of the company adopted and published the following resolution, hereafter spoken of as the Snowville resolution:

"Resolved, that the stock heretofore subscribed to be paid in cash by residents of Floyd county, is to be paid for in regular installments, as provided in subscription lists; the amounts so collected from said payments to be

deposited in the Blue Ridge Bank of Willis, Floyd county, Virginia, in the name of the railway; upon said deposits interest shall be paid at the rate of four per cent; said deposits shall be held as a trust fund until the completion of the road ready for the rolling stock; in the event the proposed road, for any reason, except for causes over which the board has no control, such as acts of God, etc., is not completed ready for said rolling stock within three years from the time of signing the said contract, amounts paid in by Floyd county subscribers shall be returned to them with accrued interest. This fund to be withdrawn upon completion of the road and upon the order of the board of directors."

Following this resolution, from time to time the Floyd subscribers (appellants here) deposited in the Blue Ridge Bank of Willis, in the name of the company, certain amounts of money as credits on their stock subscriptions, aggregating $9,518.35 of principal. The company ceased work by January, 1917. In 1918, this creditors' suit was brought, a receiver appointed, and the Blue Ridge Bank of Willis directed to pay the fund over to the receiver for disposition in the cause. Thereafter, these complaining stockholders became parties to the proceeding.

They claimed that they never became subscribers to the stock of the company, liable upon their subscriptions, because there was a condition precedent in the contract that $50,000.00 was to be subscribed in and for Floyd county end of the line. This of course raises a question of fact. They also claimed that the fund here involved was deposited in bank under the Snowville resolution, and that the company never acquired any title thereto because the condition pre-

cedent was never performed, and hence the fund belongs to them and is not liable for the debts of the corporation.

The trial court held otherwise, and this appeal is the result.

Claiming that the stock subscription was simply an executory contract to subscribe, and that the liability only attached when the condition precedent should be performed, this concession is made in the petition for appeal: "It is admitted that if at that time all of the conditions precedent had been performed, then at that time, that is at the time of the Snowville resolution, there would have been a binding contract to have paid the total amount of the subscriptions of $50,000.00, and neither the railroad company nor the subscribers could have gotten rid of these subscriptions to the detriment of the creditors." This concession reaches the crucial question in the case. It is a question of fact which has been determined against the subscribers by the trial court.

We are clear in our view that the evidence supports his conclusion, that before the Snowville resolution was adopted these subscribers had entered into a binding contract of subscription to the stock of the corporation. There is some confusion in the evidence, and it seems to be contended that the $50,000.00 must have been subscribed by the citizens of Floyd county. While this may have been in the minds of the parties, the contract does not justify this construction. The vital condition was that there should be a minimum capital of $100,000.00 subscribed, $50,000.00 apportioned to the Radford end of the line and the other $50,000.00 to what is called the Willis or Floyd end of the line. It could have been a matter of no consequence whatever if a citizen of Radford had

contributed to make up the Floyd proportion, or if the citizens of Floyd had contributed to make up the Radford apportionment. Even if this were not true, the finding of the trial court was that the condition precedent, the subscription of $50,000.00 for the Floyd apportionment, had been met before the Snowville resolution was adopted. At that juncture, if these subscribers had repudiated their contracts and had sought to have them rescinded because of fraudulent misrepresentation and failure of consideration, they would have had a strong case and might have succeeded in escaping the obligation imposed by their subscription. Instead of doing this, they continued to act as stockholders and accepted the tender made by the board of directors in the Snowville resolution. That resolution undertook to accord to them certain preferential rights to the detriment of all the other stockholders of the company who were entitled to equal rights, and disregarded the obligation of the company to its creditors.

The Snowville resolution, then, whatever its effect as between the company and these subscribers, is invalid as to the creditors of the corporation.

It seems hardly necessary to cite authority to support this conclusion. The acceptance of the conditions of the Snowville resolution not only waived all the other conditions of the contract, but their subsequent action as stockholders constituted a waiver of the right to rescind their subscriptions for the precedent fraud.

Among the recent cases emphasizing the fact that suits for the rescission of stock subscriptions upon this ground must be promptly prosecuted are these: *Weisiger* v. *Richmond Ice Machine Co.*, 90 Va. 795, 20 S. E. 361; *Martin* v. *South Salem Land Co.*, 94 Va. 28, 26 S. E. 591; *Brame* v. *Guarantee Finance Co.*, 139 Va. 394, 124 S. E. 477; *Irby* v. *Harvey*, 143 Va. 51, 129 S. E. 220.

A stockholder cannot determine that he will stay with the company if it should be successful, but will repudiate his stock subscription if it fails. A stock subscription induced by fraud is not void but merely voidable. An innocent subscriber may rely upon representations made to him as inducements, and thereafter promptly repudiate his contract if they prove to be false. He cannot, however, keep silent until after the insolvency of the company and after the rights of its creditors have supervened, if he has failed either to exercise reasonable care to discover the fraud, or if upon its discovery, he has neglected to act promptly, He takes the risk if he awaits the chance of the com. pany's success, for if he waits too long and the company becomes insolvent, after obtaining credit on the-faith of his subscription, he looses because of the superior equity of the creditor; and this because the capital raised or promised by the stockholders is the primary source of the credit of the corporation.

The opinion of the trial court judge, Hon. Horace Sutherland, sufficiently states the additional facts which may be necessary for a comprehension of the case, and his conclusion upon the facts found are sound.

"This suit was originally brought by the Radford State Bank and others, creditors of the Radford-Willis Southern Railway Company, against the Radford-Willis Southern Railway Company and the Blue Ridge Bank, Inc., of Willis, and under the original bill H. C. Gilber, Esq., was appointed receiver of said railway company.

"The cause was instituted some seven or eight years ago. The receiver found a fund of $10,000.00 in the Blue Ridge Bank, Inc., of Willis, Virginia, which fund had been placed in said bank by subscribers to the

stock of said railway company. A decree was entered directing this fund paid over to the receiver, whereupon the bank came in by petition and set up the fact that this fund had been paid to it as trustee, or as a mere stakeholder, by the Floyd subscribers to the stock of said railway company, under what is known in this cause as the Snowville resolution, and that the conditions of the Snowville resolution had not been complied with, and for this reason the receiver was not entitled to the fund, and that the same should be turned back to the Floyd subscribers with its accrued interest.

"These proceedings were had while the Floyd subscribers were not parties to the suit, but later on the subscribers came in by answer and cross-bill, and by agreement of attorneys representing all interested parties, the case proceeded as though they had been original parties to the suit.

"The sole question in this cause is whether or not this $10,000.00, with its accrued interest, should be turned over to the receiver for the benefit of the creditors of the Radford-Willis Southern Railway Company, or should it be refunded to the subscribers who paid it into the Blue Ridge Bank, Inc. The record discloses that the subscribers, prior to the date of the Snowville resolution, had already signed subscription forms for stock, but had not made any payments on same until the Snowville resolution was passed, and at the date of the Snowville resolution the rights of creditors in this suit had already attached. The Snowville resolution was heretofore declared *ultra vires* by Judge Campbell, and I am of opinion that said resolution is *ultra vires* as to the creditors of the Radford-Willis Southern Railway Company, due to the fact that it was passed after the Floyd subscribers signed subscription forms, and after the rights of creditors had attached. The

original subscription form is conditioned upon $50,000.-00, Floyd's part, being raised, and the evidence in this cause discloses that the full amount of $50,000.00, Floyd's part, had been subscribed. This evidence seems to clearly show that the conditions upon which the stock subscriptions were to be binding both upon the Radford subscribers and the Floyd subscribers, were fully met.

"I think the question as to who is entitled to this fund of $10,000.00 depends solely upon the question as to whether or not the Floyd subscribers are bound by their stock subscription, and that the Snowville resolution goes out of the case. It is true that the Floyd subscribers paid their money to the Blue Ridge Bank on the strength of the Snowville resolution, and I presume anticipated the return of their money if the conditions of the Snowville resolution were not complied with, but if they were bound originally on their stock subscription, and the rights of these creditors had already attached prior to the date of the Snowville resolution, of course, as to the creditors, this resolution is void, and, as heretofore stated, I think all of the conditions of the original stock subscription had been complied with, and that they are binding upon the Floyd subscribers, unless their subscriptions were secured by fraudulent representations, as claimed by the subscribers.

"On this phase of the case the Floyd subscribers contend that in certain public booster meetings held in Floyd county certain of the representatives of the railway company made public statements which induced these Floyd subscribers to subscribe to the stock. It seems that most of these statements were made by Judge Gardner and a man by the name of Vaughan, and were to the effect that not a cent of the

subscribers' money would be spent on this road until it was let to a reputable contractor, who was to give bond in the penalty of $100,000.00 for the completion of the road. This is about as strong a statement as was made, and all of them were made under similar conditions. The question immediately arises, did any individual, under the circumstances, have any right to rely upon these statements, the statement being made at a public booster meeting, when it was generally known that the prime object of the meeting was to secure stock subscriptions in order that the road between Radford and Floyd might be constructed?

"I am of opinion that they had no right to rely upon these statements and, further, if they did have a right to rely upon them, under the law in this State, as laid down in the case of *Martin* v. *South Salem Land Company*, 94 Va. 28, 26 S. E. 591, 598, they were compelled to take steps to have their stock subscriptions rescinded on the ground of fraud immediately upon the discovery of the same. In this case it is said: 'The decisions of the courts, we think, sustain the doctrine laid down in the text books that a person who has, to all external purposes, become a stockholder cannot, as to creditors who may have trusted the company upon the faith of his membership, have his contract of subscription rescinded upon the ground of fraud where he did not repudiate the contract and take steps to have it rescinded before the company stopped payments and became actually insolvent; certainly not where it does not appear that he was diligent in discovering the fraud and prompt in repudiating his contract after it was discovered.'

"The record in this cause does not disclose that any of the Floyd subscribers took any steps to repudiate their contract, or that they used any diligence whatsoever in the matter.

"For the foregoing reasons, I am of opinion that the Floyd subscribers cannot rely on any fraudulent representations which may have been made as aforesaid, and that the receiver is entitled to the fund of $10,000.-00, with its accrued interest, for the benefit of the creditors of the Radford-Willis Southern Railway Company."

*Affirmed.*