WILKINSON, Circuit Judge,
concurring in part and dissenting in part.
I concur in much of the majority opinion. The federal claims were properly dismissed as time-barred, and the conspiracy claims were properly dismissed as well. But as to the Virginia common law fraud claims, I do not believe that two of the eight remaining statements are actionable because they are too general. Specifically, representations that “it works, they both work,” and that the “virus goes in but does not come out,” seem far too brief and too general to state a claim in fraud.
All of this is a matter of Virginia law. Nowhere has the Virginia Supreme Court come close to saying that statements of this general a nature present a viable basis for a fraud claim. Quite the opposite: the court has expressly rejected claims predicated on expressions of opinion, unfulfilled promises, statements as to future events, puffing, “dealer talk,” or “booster statements.” The Virginia Supreme Court has repeated that:
[i]t is well settled that a misrepresentation ... must be of an existing fact, and *603 not the mere expression of an opinion. The mere expression of an opinion, however strong and positive the language may be, is no fraud. Such statements are not fraudulent in law, because ... they do not ordinarily deceive or mislead. Statements which are vague and indefinite in their nature and terms, or are merely loose, conjectural or exaggerated, go for nothing, though they may not be true, for a man is not justified in placing reliance upon them.
Mortarino v. Consultant Eng’g Servs., Inc., 251 Va. 289, 467 S.E.2d 778, 781 (1996) (quoting Saxby v. So. Land Co., 109 Va. 196, 63 S.E. 423, 424 (1909)). While the majority acknowledges that unfulfilled promises or future statements cannot be actionable, the Virginia Supreme Court has added that neither “can ‘booster’ statements of enthusiastic agents be depended upon. They are to be expected.” King v. Commercial Fin. Co., 163 Va. 260, 175 S.E. 733, 736 (1934) (internal citation omitted).
There is a reason for this reluctance to allow puffing, generalities, opinions, or merchant talk to form the basis for a foray into court. We live in a free enterprise system in which it is almost inescapable that people will puff their wares. One cannot, and the law does not, expect companies to disown their own products. Any reasonable investor, therefore, treats such statements with a healthy degree of skepticism. The law has never protected those who do not. See Bank of Montreal v. Signet Bank, 193 F.3d 818, 827 (4th Cir.1999) (collecting Virginia cases).
This is one reason that the statements at issue are not actionable, and this reason is further connected with the reliance element of common law fraud. “[0]ne who seeks to hold another in fraud must clearly show that he has relied upon the acts and statements of the other.” Harris v. Dun-ham, 203 Va. 760, 127 S.E.2d 65, 70 (1962). Virginia law has long placed investors at their peril when they incautiously rely on puffing or “booster” statements. In Akers v. Radford State Bank, 153 Va. 1, 149 S.E. 528 (1929), the corporation’s representative had stated that “not a cent of the [stock’s] subscribers’ money would be spent” on a railroad until a contractor gave bond and let the railroad. Id. at 531. Appellants alleged that this induced them to subscribe to the stock, but the Virginia Supreme Court rejected the claim, because appellants did not “have any right to rely upon these statements ... [which were] made at a public booster meeting” held to secure stock subscriptions. Id.
Glaser’s claim similarly lacks merit. He has shown great familiarity with Enzo’s business yet relied recklessly on booster statements and puffing. The record discloses an astonishing history of day-trading by buying on margin. As the district court was careful to note, “Plaintiffs’ brokerage statements evince a pattern of speculative day-trading, an inherently risky undertaking, by sophisticated investors, not ‘hapless’ plaintiffs, who systematically acquired over one million shares over a six-year period.” Glaser v. Enzo Biochem, Inc., 303 F.Supp.2d 724, 750 (E.D.Va.2003).
Someone who evinces a trading sophistication like Glaser’s should not receive the special solicitude of the law when he fails to observe the most basic norms of commercial activity. In Harris, for instance, after noting that reliance is an essential element of fraud, the Virginia Supreme Court pointedly observed that one party “was an experienced businessman” with “business acumen, [a] familiarity with accounting procedures, and [a] knowledge of financial affairs.” Harris, 127 S.E.2d at 70. Sophisticated investors — such as those who have “conducted [their] own indepen *604 dent investigation into the subject matter of [their] purchase,” id. — rely-at their peril, because their rebanee on statements like those at issue here are not justifiable. See also Horner v. Ahern, 207 Va. 860, 158 S.E.2d 216, 219 (1967) (someone who has the ability to protect himself with “ordinary care and prudence” is left by the law “where he has been placed by his own imprudent confidence”).
The majority’s unwillingness to recognize this legal tradition in Virginia law would have unfortunate implications if it were ever adopted by Virginia courts. It is no accident that Virginia law has developed as it has. Insubstantial suits for securities fraud simply drain energy from an economy that, in essence, is meant to remain entrepreneurial. No one doubts that overselling products like a cure for AIDS would be unfair not only to investors. It would represent a cruel hoax played against a particularly vulnerable segment of our society. On the other hand, holding that statements like the two specifically addressed above are actionable is to pile multiple legal difficulties on top of the already difficult medical challenges involved in vaccine production. Such rulings make it more difficult for vaccines of any sort — flu, smallpox, AIDS — to reach market because many vaccine manufacturers now face additional legal disincentives to develop them. Over the past thirty years, the number of vaccine manufacturers in America has declined from twénty-five to a grand total of five manufacturers today. Denise Grady, Before Shortage of Flu Vaccine, Many Warnings, N.Y. Times, Oct. 17, 2004, at Al. It is not novel to attribute the disappearance of manufacturers in part to legal claims. See, e.g., id. (“Some companies dropped out because of lawsuits,” while others found it too burdensome “to meet regulatory standards.”) There may well be multiple causes for the dwindling numbers of vaccine manufacturers in our country, but it seems fair to observe that ungrounded suits in fraud will not assist in reversing the decline.
If the law actually required this consequence, so be it. But at least the Virginia law of fraud does not. I agree that six of the twelve statements are more than puffing, although Glaser must still be able to demonstrate on remand a reasonable reliance upon them. Even if those six could survive a Rule 12(b)(6) motion, the other two never could and were properly dismissed by the district court. It is this failure to strike an appropriate balance between warranted liability and the unwarranted encouragement of frivolous securities fraud actions that leads me to dissent in part from the majority opinion.